UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RACHEL WILLIAMS,

                         Plaintiff,

v.

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                         Defendant.

Case # 16-CV-283-FPG

DECISION AND ORDER

Rachel Williams ("Williams" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 11. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

On September 4, 2012, Williams protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 174-79. She alleged that she had been disabled since June 5, 2012 due to herniated discs in her back, two torn meniscuses, nerve damage, muscle spasms, and twitching in her fingers, hands, and feet. Tr. 197. On September 12, 2014, a hearing was held

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

before Administrative Law Judge Donald T. McDougall ("the ALJ") at which Williams and a vocational expert ("VE") appeared and testified. Tr. 44-75. On November 18, 2014, the ALJ issued a decision finding that Williams was not disabled within the meaning of the Act. Tr. 17-26. On February 9, 2016, the Appeals Council denied Williams's request for review. Tr. 1-4. Thereafter, Williams commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his

or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Williams's claim for benefits under the process described above. At step one, the ALJ found that Williams had not engaged in substantial gainful activity since the application date. Tr. 19. At step two, the ALJ found that Williams has the severe impairment of vertebrogenic disorder following a motor vehicle accident. Tr. 19. At step three, the ALJ found that this impairment did not meet or medically equal an impairment in the Listings. Tr. 19-20.

Next, the ALJ determined that Williams retained the RFC to perform light work[3] with additional limitations. Tr. 20-24. Specifically, the ALJ found that Williams cannot rotate her head or neck more than 45 degrees in either direction, flex her neck, or look up; must be able to change positions briefly, *i.e.*, for one to two minutes at least every half hour; cannot work on ladders, scaffolds, or ropes, at heights, or around dangerous machinery; and can occasionally stoop, kneel, crouch, balance, crawl, and walk up stairs or ramps. Tr. 20.

At step four, the ALJ indicated that Williams had no past relevant work. Tr. 24. At step five, the ALJ relied on the VE's testimony and found that Williams can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 25-26. Specifically, the VE testified that Williams could work as a cashier,

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

4

ticket seller, telephone solicitor, order clerk, and document preparer. Tr. 25. Accordingly, the ALJ concluded that Williams was not "disabled" under the Act. Tr. 26.

**II. Analysis**

Williams argues that remand is required because the ALJ's RFC assessment is not supported by substantial evidence. ECF No. 9-1, at 22-30. Specifically, Williams asserts that the ALJ's highly specific RFC finding is based on his own lay interpretation of the raw medical evidence instead of on a medical source's opinion. *Id.* The Court agrees.

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citation omitted); 20 C.F.R. § 416.945(a). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.* (citation omitted). Depending on the circumstances,

like when the medical evidence shows only minor physical impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Id.*

Here, the only medical opinion of record was provided by consultative examiner Donna Miller, D.O. ("Dr. Miller").[4] Tr. 270-73. Dr. Miller opined that Williams had "mild to moderate limitations for repetitive heavy lifting, bending, carrying, and repetitive kneeling and squatting." Tr. 273. The ALJ summarized Dr. Miller's examination findings and medical opinion in his decision and concluded that the opinion was only entitled to "some weight" because Williams's "MRI studies revealed her condition was not that serious." Tr. 22. It is unclear to the Court how the ALJ, who is not a medical professional, was able to determine that Williams's condition was "not that serious" based on complex MRI findings. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor.").

Even though Dr. Miller's opinion was the only medical opinion in the record and the ALJ gave it only "some weight," he somehow concluded that Williams could perform light work with very specific limitations, including that she must not rotate her head or neck more than 45 degrees in either direction, flex the neck, or look up, and that she must be able to change positions briefly for one to two minutes at least every half hour. Tr. 20. These limitations are not supported by any doctor's opinion, treatment notes, or Williams's testimony. Williams

---

[4] Williams also argues that Dr. Miller's opinion was "stale" because it was rendered several months before her left knee arthroscopic surgery. ECF No. 9-1, at 25. The record indicates that Williams continued to suffer knee pain after her surgery. *See, e.g.*, Tr. 496, 501, 506. On remand, the ALJ should consider obtaining a current medical opinion to properly assess Williams's physical condition and ability to work. *See Girolamo v. Colvin*, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (finding that the ALJ should not have afforded great weight to medical opinions rendered before the plaintiff's second surgery); *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition").

testified, for example, that she could walk for only 10 minutes at a time, stand or sit for only 15 to 20 minutes at a time, and that she experienced neck pain with a limited range of motion. Tr. 51, 52, 58, 61. She did not indicate, and no doctor suggested, that her symptoms would be alleviated if she avoided rotating her head or neck more than 45 degrees and could change positions for one to two minutes every half hour. In fact, there is some evidence in the record that the transition from the seated to standing position actually aggravated her knee pain. *See, e.g.*, Tr. 453, 458, 466, 496, 506.

A significant portion of the ALJ's decision summarizes the medical evidence of record, but these treatment notes merely contain bare medical findings and do not address how Williams's impairments affect her ability to perform work-related functions. Tr. 21-23. The ALJ was not permitted to render a common sense judgment about Williams's functional capacity because these treatment records contain complex medical findings like MRI results, ultrasonic knee injection notes, and knee arthroscopy operative reports. *See, e.g.*, Tr. 279, 456, 458-62, 468-78, 489, 493-95, 525-534; *Dale v. Colvin*, No. 15-CV-496-FPG, 2016 WL 4098431, at *4 (W.D.N.Y. Aug. 2, 2016) ("This evidence, which contains complex medical findings like MRI results, does not permit the ALJ to render a common sense judgment about functional capacity.").

Williams also argues that the ALJ should have provided a function-by-function analysis because the rationale behind his RFC assessment cannot be readily discerned. ECF No. 9-1, at 26. "The Act's regulations require that the ALJ include in his RFC assessment a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis." *Palascak v. Colvin*, No. 1:11-CV-0592 (MAT), 2014 WL 1920510, at *10 (W.D.N.Y. May 14, 2014) (quotation marks and

citation omitted). This means that the ALJ "must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." *Id.* (citation omitted); 20 C.F.R. § 416.969a(a); S.S.R. 96-8p, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996). Remand is not required, however, simply because the ALJ failed to conduct an explicit function-by-function analysis. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The ALJ's RFC determination may nonetheless be upheld when his or her analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *Id.* But "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 177-78 (citation omitted).

Here, the ALJ's RFC assessment discounts Dr. Miller's opinion and then summarizes the medical record without tying that evidence to the functional demands of light work. Tr. 20-24. The ALJ concludes that Williams can perform light work with very specific limitations but does not explain how he arrived at these findings. Without a function-by-function assessment relating this evidence to the requirements of light work (20 C.F.R § 416.967(b)) or reliance on a medical source's opinion as to Williams's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.

Accordingly, for all the reasons stated, the Court finds that remand is required because the ALJ's RFC assessment is not supported by substantial evidence.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED, and this

matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 17, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court